| | |
|---|---|
| **WARREN EDWARD CULBERTSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-15958-JVM** |
| **J.P.S.O., ET AL.** | |

## ORDER AND REASONS

Plaintiff, Warren Edward Culbertson, a state inmate, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983. He named as defendants the Jefferson Parish Sheriff's Office, the Jefferson Parish Correctional Center, Deputy Paul Dimitri, and Sergeant Mark Layrisson. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge,[1] and a bench trial was held on October 17, 2017.

### I. Plaintiff's Claims

In this lawsuit, plaintiff claims that Deputy Paul Dimitri and Sergeant Mark Layrisson used excessive force to effect plaintiff's arrest on August 13, 2016, despite the fact that he offered no resistance. He further claims that the defendants refused him medical treatment for his wrist, which he alleges was broken during the arrest.

### II. The Evidence at Trial

The following individuals testified at trial: Plaintiff, Deputy Chancellor Wollaston, Deputy Renoid Berthelot, Sergeant Mark Layrisson, and Deputy Paul Dimitri. The relevant testimony was as follows:[2]

---

[1] Rec. Doc. 25.
[2] A great deal of other testimony was adduced at trial concerning extraneous issues, such as the circumstances of the underlying crime and the events which occurred while plaintiff was being booked into the jail. Because that testimony is not directly relevant to plaintiff's claims, it is not being summarized herein.

Plaintiff testified: On August 13, 2016, plaintiff was driving a vehicle which did not belong to him. While he was on the Westbank Expressway, a tire blew out. At that point, a police car following him activated its lights. Plaintiff pulled over and stopped the vehicle. When instructed to do so, he exited the vehicle, backed toward the two officers while facing in the opposite direction, and kneeled on the ground. He placed his left hand in the air as instructed but explained to the officers that, due to nerve damage, he was unable to comply with the instruction to raise his right hand. One of the officers then slammed plaintiff facedown onto the ground, placed his right hand in handcuffs, and stepped on the handcuffs. The officer then proceeded to put plaintiff's left hand in the handcuffs. After he was handcuffed, plaintiff was punched two or three times in the face by one officer and kicked once in the face by the other officer. Although plaintiff identified defendants Dimitri and Layrisson as the officers involved, he did not know which officer took which action because he was facing away from them. Plaintiff began yelling that his wrist had been broken by the officer stepping on the handcuffs. The officer told plaintiff to stop resisting; however, he was not resisting. Plaintiff was then placed into a police car. Although the police report stated that plaintiff banged his face on the cage while in that police car, he stated that was untrue and that it would have been impossible because of the way in which he was restrained. He was transported to the jail by Deputy Berthelot, who is not a defendant herein, and Dimitri and Layrisson did not accompany them or meet them at the jail. Plaintiff was not provided any medical treatment until after he was booked at the jail. He conceded that he did not actually request that either Dimitri or Layrisson arrange for medical care at the time of the arrest; however, plaintiff stated that his need for medical attention was nevertheless obvious in light of the fact that he had said his wrist was broken. He was charged with automobile theft in connection with the arrest, and he ultimately pleaded guilty to that charge.

Chancellor Wollaston testified: Wollaston booked plaintiff into the jail after his arrest. Wollaston did not recall seeing any injuries to plaintiff's face or wrist upon plaintiff's arrival at the jail. Wollaston did not recall plaintiff saying that physical force was used to effect his arrest or that he was injured.

Renoid Berthelot testified: Berthelot was the initial officer who responded to the call concerning a vehicle being stolen from the parking lot of a Brother's Food Mart. Based on the vehicle information obtained and distributed by Berthelot, Dimitri and Layrisson located and stopped the vehicle. Berthelot then took the victims to the scene of the stop. When they arrived, plaintiff was already restrained in the backseat of Dimitri's patrol car. The victims identified both plaintiff and the stolen vehicle. Berthelot observed no injuries to plaintiff at that time, and plaintiff did not complain of any injuries to Berthelot. Berthelot did not observe either Dimitri or Layrisson make any physical contact with plaintiff. Without his handcuffs being switched, plaintiff was removed from Dimitri's vehicle, placed into the backseat of Berthelot's vehicle, and transported by Berthelot to the Jefferson Parish Correctional Center. During the transport, plaintiff screamed profanities, kicked the back of the cage, and hit his head and body against the cage and car window. Due to plaintiff's behavior, Berthelot contacted jail officials, advised them that plaintiff was being combative, and requested that they have officers meet the car at the jail's sally port. Upon their arrival at the sally port, Berthelot first observed injuries to plaintiff's face. Plaintiff did not complain to Berthelot of any injuries or request medical attention while being transported to the jail, and Berthelot did not observe plaintiff request such attention upon arrival at the jail. Dimitri and Layrisson did not accompany Berthelot and plaintiff to the jail.

Mark Layrisson testified: After interviewing the victim and viewing the surveillance footage at the Brother's Food Mart, Layrisson relayed information regarding the suspect and left

3

to search for the stolen vehicle in the area. When Dimitri reported that he had located the vehicle, Layrisson went to Dimitri's location. They stopped the vehicle, and Dimitri instructed plaintiff to exit the vehicle and approach them. Plaintiff was yelling as he approached, but they could not hear what he was saying because he was facing the opposite direction. They instructed plaintiff to place his hands in the air, but he failed to raise his right hand. Dimitri instructed plaintiff to kneel, and he did so with only his left hand in the air. They then placed plaintiff in a prone position on the ground, and he explained that he could not raise his right hand due to a medical problem. The officers handcuffed plaintiff and told him that he was being arrested for stealing the vehicle. At that point, plaintiff became belligerent and started cursing the officers, who placed him in the backseat of Dimitri's vehicle. After Berthelot was notified of the arrest, he and the victims arrived at the scene, and plaintiff was transferred to Berthelot's vehicle to be transported to the jail. After Berthelot and plaintiff left, Layrisson and Dimitri stayed on the scene with the victims, replaced the tire on the stolen vehicle, and then resumed their patrols without going to the jail. Layrisson denied that either he or Dimitri punched plaintiff, kicked him, or stepped on his handcuffs. He also denied that plaintiff requested medical treatment from either himself or Dimitri. Layrisson stated that if an arrestee is injured during an arrest or requests medical treatment, standard protocol requires that the officers request that emergency medical services respond to the scene to evaluate whether immediate medical attention is required.

Paul Dimitri testified, and his testimony was fully consistent with that of Layrisson. Specifically, Dimitri denied that either he or Layrisson punched plaintiff, kicked him, or stepped on his wrist. Dimitri also denied that plaintiff requested medical treatment, and he stated that emergency medical services would have been called if there had been such a request. Dimitri did

4

not observe plaintiff banging his body against the police car cage or door. Dimitri also did not observe any injuries to plaintiff.

At trial, eight exhibits were admitted into evidence, including police reports, plaintiff's medical and booking records, photographs taken after booking, and criminal records concerning plaintiff's conviction.

### III. Analysis

### A. Claims Against J.P.S.O. and J.P.C.C.

As an initial matter, the Court notes that plaintiff named "J.P.S.O." and "J.P.C.C." as defendants. For the following reasons, the claims against those defendants must be dismissed.

As to "J.P.S.O.," plaintiff is presumably referring to the Jefferson Parish Sheriff's Office. However, "a sheriff's office is not a legal entity capable of being sued ...." Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 283 (5th Cir. 2002); accord Mitchell v. Jefferson Parish Correctional Center, Civ. Action No. 13-4963, 2013 WL 6002770, at *3 (E.D. La. Nov. 12, 2013 ); Francois v. Jefferson Parish Sheriff's Office, Civ. Action No. 12-1965, 2013 WL 654640, at *6 (E.D. La. Feb. 21, 2013) ("Louisiana law has not afforded any legal status to parish sheriff's departments such that they can be sued.").

As to "J.P.C.C.," plaintiff is presumably referring to the Jefferson Parish Correctional Center. However, a correctional center may not be sued because it is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983. See, e.g., Mitchell, 2013 WL 6002770, at *3; Stamps v. Jefferson Parish Correctional Center, Civ. Action No. 12-1767, 2012 WL 3026808, at *2 (E.D. La. July 12, 2012), adopted, 2012 WL 3027945 (E.D. La. July 24, 2012); Castellanos v. Jefferson Parish Correctional Center, Civ. Action No. 07-7796, 2008 WL 3975606, at *5 (E.D. La. Aug. 22, 2008).

## B. Claims Against Dimitri and Layrisson

### 1. Excessive Force Claims

As noted, plaintiff claims that Dimitri and Layrisson used excessive force in effecting the arrest. The United States Fifth Circuit Court of Appeals has explained:

> The Fourth Amendment creates a "right to be free from excessive force during a seizure." Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012); accord U.S. Const. amend. IV. "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (quoting Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005)).
> The test used to determine whether a use of force was reasonable under the Fourth Amendment "is not capable of precise definition or mechanical application." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Rather, "its proper application requires careful attention to the facts and circumstances of each particular case, including" (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Thus, the overarching question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Id. at 397, 109 S.Ct. 1865.

Trammell v. Fruge, 868 F.3d 332, 339-40 (5th Cir. 2017).

In the instant case, the parties' versions of events differ starkly. However, it is *plaintiff* who bears the burden of proving his claims by a preponderance of evidence. Bowden v. City of Electra, 152 Fed. App'x 363, 367 (5th Cir. 2005) ("[A] plaintiff in a suit filed under 42 U.S.C. § 1983 has the burden of proving each element of the constitutional violation."); Youngblood v. Tangipahoa Parish Sheriff Dep't, Civ. Action No. 88-1400, 1989 WL 30274, at *3 (E.D. La. Mar. 28, 1989) ("The burden of proof in a civil rights action under 42 U.S.C. § 1983, as with all civil litigation, is upon the plaintiff who must sustain his or her position by a preponderance or greater

weight of credible evidence."). Here, plaintiff simply has not met his burden on the excessive force claims. Although he testified that the defendants punched him, kicked him, and broke his wrist by stepping on his handcuffs, the defendants testified more credibly that they did not. Moreover, Berthelot testified credibly that he observed no injuries to plaintiff and that plaintiff complained of no injuries. Likewise, Wollaston testified credibly that he recalled neither seeing any injuries to plaintiff's face or wrist upon plaintiff's arrival at the jail nor any statements by plaintiff that physical force was used to effect his arrest or that he was injured. Although evidence generated several hours after plaintiff was booked into the jail showed that he had facial abrasions (as documented in the photographs at Exhibit No. 6) and a contusion to his right hand that was subsequently determined to be a radial styloid fracture (as documented in the medical records at Exhibit No. 3), there is simply no credible evidence that *Dimitri or Layrisson* employed excessive force during arrest which caused those or any other injuries. Therefore, plaintiff's excessive force claims against Dimitri and Layrisson are dismissed.

## 2.  Claims for the Denial of Medical Care

Plaintiff also claims that Dimitri and Layrisson violated his rights by denying him medical care for his broken wrist. That medical claim arises under the Fourteenth Amendment. See Nerren v. Livingston Police Department, 86 F.3d 469, 473 (5th Cir. 1996) ("After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment."). Such a Fourteenth Amendment medical claim is proper where a government official had subjective knowledge of a substantial risk of serious harm to the plaintiff but responded with deliberate indifference to that risk. Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996); accord Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010).

7

Therefore, to prove his medical claims, plaintiff must present evidence showing that (1) the defendants had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn, (2) the defendants actually drew that inference, and (3) the defendants' response to the risk indicates that they subjectively intended that harm to occur. See Brown v. Strain, 663 F.3d 245, 249 (5th Cir. 2011).

Here, again, there is simply no credible evidence that plaintiff was injured or required any medical attention at or before the time Dimitri and Layrisson released plaintiff into Berthelot's custody for transportation to the jail. Even if plaintiff was subsequently denied medical care while being transported by Berthelot or after the arrival at the jail, *neither Dimitri nor Layrisson* can be held liable for that denial because their roles in this event had already ended and plaintiff was no longer in their custody. Plaintiff's claims against Dimitri and Layrisson for the denial of medical care are therefore dismissed.

Accordingly,

**IT IS ORDERED** that plaintiff's claims against the Jefferson Parish Sheriff's Office, the Jefferson Parish Correctional Center, Deputy Paul Dimitri, and Sergeant Mark Layrisson are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this sixth day of November, 2017.

                                                  **JANIS VAN MEERVELD**
                                                **UNITED STATES MAGISTRATE JUDGE**